UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASKIN-ROBBINS FRANCHISED SHOPS LLC )
  a Delaware Limited Liability Company, )
130 Royall Street, Canton, MA 02021 )

               Plaintiff,

v.

CHAIROD RAUNGTRIPHOP and
YUPIN RAUNGTRIPHOP,
  Both residents of the Commonwealth of Virginia )
9481 Gauge Drive, Fairfax Station, VA 22039 )

              Defendants.

CASE NUMBER 1:06CV01492

JUDGE: Emmet G. Sullivan

DECK TYPE: Contract

DATE STAMP: 08/24/2006

## COMPLAINT

### Parties

1.     Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins"), successor-in-interest to Baskin-Robbins USA, Co. Plaintiff Baskin-Robbins is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Defendant Chairod Raungtriphop is, upon information and belief, a natural person and a citizen and resident of the Commonwealth of Virginia. At all times relevant to this action, Chairod Raungtriphop was an owner and operator of a retail ice cream store located at 2604 Connecticut Avenue Northwest, Washington, District of Columbia 20008 (the "Defendants' Store"). Defendant is a Baskin-Robbins franchisee for Defendants' Store pursuant to a Franchise Agreement dated December 22, 2003. Defendant is licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

3. Defendant Yupin Raungtriphop is, upon information and belief, a natural person and a citizen and resident of the Commonwealth of Virginia. At all times relevant to this action, Yupin Raungtriphop was also an owner and operator of Defendants' Store and a Baskin-Robbins franchisee pursuant to the Franchise Agreement. Defendant is licensed to use the Baskin-Robbins trademarks, trade names and trade dress.

## Jurisdiction and Venue

4. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## Background Facts

6. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

7. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since

approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

8. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

9. The Baskin-Robbins trademarks are utilized in interstate commerce.

10. The Baskin-Robbins marks have been very widely advertised and promoted by The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

11. Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States. In the fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

12. As a result of the extensive sales, advertising, and promotion of items identified As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

3

13. The goodwill and reputation associated with the Baskin-Robbins marks are the goodwill and reputation associated with the Baskin-Robbins marks are impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Baskin-Robbins trademarks.

### Defendants' Use of Baskin-Robbins' Marks

14. Defendants are licensed to use the Baskin-Robbins trade names and trademarks in accordance with the terms of the Franchise Agreement.

15. Baskin-Robbins provides each of its franchisees manuals, guides, and plans (collectively referred to hereinafter as the "Manuals") which set forth in detail the procedures, methodology, and standards applicable to the operation of a Baskin-Robbins store. These documents include:

   a. The Store Operations and Management Guide, which includes detailed sections on Dress Standards (Chapter 205.1), Cleanliness and Store Appearance (Chapters 300.1-303.1), Ice Cream Product Handling (Chapter 604.1), Yogurt Product Handling (Chapter 609.1), Product Preparation (Chapters 700.1-704.1), Sanitation and Maintenance (Chapters 1100.1-1108.1), and Safety (Chapter 1207.1);

   b. The Rules of Operation of a Baskin-Robbins Store; and

   c. The Retail Food Safety System Manual.

16. The Baskin-Robbins manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

17. Maintenance of the highest standards of health, sanitation, and safety are essential to the development and maintenance of the reputation and goodwill of Baskin-Robbins. The

4

Franchise Agreement executed by Defendants contains acknowledgments and agreements by them concerning the importance of enhancing the goodwill Baskin-Robbins has created. For example, the applicable paragraphs of the Franchise Agreement include:

    a.    Sections 5.0 and 5.1: FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons. FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole. . . . FRANCHISEE further agrees as follows:

    b.    Section 5.1.1: FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR. All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand. FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

    c.    Section 5.1.6: FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.

18.    The Franchise Agreement executed by Defendants contains acknowledgments and agreements by them concerning the effect of breaching the Franchise Agreement with respect to the goodwill Baskin-Robbins has created. For example, the applicable paragraphs of the Franchise Agreement include:

a. Sections BR-7 7.0 and 7.1: FRANCHISEE acknowledges and agrees that **Baskin 31 Robbins®** is a registered trademark owned by BRI, that said mark has been and is being used by BASKIN-ROBBINS under license from BRI, and by its franchisees and licensees of Baskin-Robbins; that said mark, together with the other Proprietary Marks presently owned by BRI or which may be acquired in the future by either or them, constitutes part of the Baskin-Robbins System; that valuable goodwill is associated with and attached to said mark and the other Baskin-Robbins Proprietary Marks. . . . FRANCHISEE agrees to use the Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement.

b. Sections 8.0 and 8.0.1: [N]either FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall . . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s).

19. The Franchise Agreement (at Section 9.3) provides that Defendants shall pay to Baskin-Robbins all damages, costs and expenses, including attorneys' fees, incurred by Baskin-Robbins as a result of any breach of the Franchise Agreement by Defendants and Defendants' failure to cure said default following notice.

20. Pursuant to the Franchise Agreement, Defendants agreed to pay to Baskin-Robbins all costs and expenses, including attorneys' fees, incurred by Baskin-Robbins in as a result of Defendants' breach of the Franchise Agreement.

21. On July 28, 2006, Defendants' Store was inspected by a representative from the Steritech Group, a third party hired by Plaintiffs' to conduct food safety inspections. Defendants' Store was identified as containing numerous standards violations relating to health, sanitation, and safety which were damaging to Baskin-Robbins' reputation and goodwill.

22. On July 28, 2006, Steritech delivered to Defendants a notice to cure listing the standards violations at Defendants' Store and requesting that the violations be cured immediately.

23. On July 31, 2006, a Baskin-Robbins representative reinspected Defendants' Store. Numerous standards violations remained uncured.

24. Despite the fact that Baskin-Robbins has brought standards violations to the attention of Defendants, they have failed to cure these violations and to bring their Store into conformity with the required standards.

25. Defendants' actions have caused and continue to cause irreparable harm to Baskin-Robbins, including harm to Baskin-Robbins' reputation and goodwill. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

## COUNT I

### (Breach of Contract)

26. The allegations of paragraphs 1 through 25 are hereby incorporated by reference.

27. The failure of Defendants to maintain their Store and to conduct business in a manner which conforms to the standards established by Baskin-Robbins in the Franchise Agreement and the Manuals constitutes a breach of contractual obligations and agreements undertaken by Defendants in the Franchise Agreement.

28. These breaches of the Franchise Agreement have caused and will continue to cause irreparable injury to the reputation and goodwill associated with the trademarks, trade names, and trade dress of Baskin-Robbins and its other franchisees.

29. As a direct and proximate result of these breaches, Baskin-Robbins has incurred substantial losses, fees, and expenses.

## COUNT II

### (Trademark Infringement)

30. The allegations of paragraphs 1 through 29 are hereby incorporated by reference.

31. Defendants' use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of their Franchise Agreement and without the consent of Baskin-Robbins is likely to confuse or deceive the public into believing, contrary to fact, that Defendants' unauthorized activities are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins. Such continued use of the Baskin-Robbins trademarks and trade names infringes Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

32. As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III

### (Unfair Competition)

33. The allegations of paragraphs 1 through 32 are hereby incorporated by reference.

34. Defendants' use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of their Franchise Agreement and without the consent of Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized

use of the Baskin-Robbins trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

35. As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV

### (Trademark Dilution)

36. The allegations of paragraphs 1 through 35 are hereby incorporated by reference.

37. Defendants' commercial use in commerce of the Baskin-Robbins trademarks and trade names outside the scope of their Franchise Agreement and without the consent of Baskin-Robbins causes dilution of the distinctive quality of the Baskin-Robbins trademarks and trade names. Such unauthorized use of the Baskin-Robbins trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(c) and applicable state law.

38. As a result of Defendants' actions, Baskin-Robbins has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### **Prayer for Relief**

WHEREFORE, Baskin-Robbins prays that this Court:

a. Enjoin Defendants to cease violating at their Store Baskin-Robbins' standards for health, sanitation, and safety as identified on the Quality Assurance Food Safety & Sanitation Reinspection form dated July 31, 2006 within five (5) days of the date of the Court's Order;

b.  Enjoin Defendants and all those acting in concert with them from infringing upon the Baskin-Robbins trademarks and trade name, from diluting the Baskin-Robbins trademarks and trade name, and from otherwise engaging in unfair competition with Baskin-Robbins;

c.  Award Baskin-Robbins judgment against Defendants for any damages Baskin-Robbins has incurred as a result of Defendants' actions, including its costs and attorneys' fees incurred in connection with this action; and

d.  Award Baskin-Robbins such other relief as this Court may deem just and proper.

Respectfully submitted,

Eric L. Yaffe (No. 439750)
Stephen J. Vaughan (No. 464136)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, DC 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

*Attorneys for Plaintiff*
Baskin-Robbins Franchised Shops LLC

Dated: August 24, 2006