UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASKIN-ROBBINS FRANCHISED SHOPS LLC )
a Delaware Limited Liability Company, )
130 Royall Street, Canton, MA 02021 )
)
Plaintiff, )
) 1:06CV01492
v. ) C.A. No. _____
)
CHAIROD RAUNGTRIPHOP and )
YUPIN RAUNGTRIPHOP, )
Both residents of the Commonwealth of Virginia, )
9481 Gauge Drive, Fairfax Station, VA 22039 )
)
Defendants. )
)

## BASKIN-ROBBINS' FRANCHISED SHOPS LLC
## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins"), successor-in-interest to Baskin-Robbins USA, Co. hereby move to enjoin its franchisees, Defendants Chairod Raungtriphop and Yupin Raungtriphop to cease violating at their Baskin-Robbins Store the standards for health, sanitation, and safety set forth in Defendants' Franchise Agreement with Baskin-Robbins and Baskin-Robbins' operating manuals. At present, Defendants are in flagrant violation of those standards. For example, a recent inspection of Defendants' shop revealed numerous violations of health and safety standards, including products not within code date, products without expiration dates, condensation and ice on cakes in dessert display, frozen food not stored at proper temperature, utensils stored in standing water in syrup rail and generally unclean and poorly maintained premises. Despite requests by Baskin-Robbins and ample opportunity to cure, Defendants refuse to correct this unacceptable situation. This is an action to

1

effect an immediate cure of specific conditions currently posing a health or safety risk at Defendants' store. These conditions constitute a material breach of the Franchise Agreement as well. Baskin-Robbins does not seek an order mandating future compliance, but only the cessation of an existing condition.

1. Defendants are Baskin-Robbins franchisees for a retail ice cream store located at 2604 Connecticut Avenue Northwest, Washington, District of Columbia 20008 ("Defendants' Store") pursuant to a Franchise Agreement dated December 22, 2003, (the "Franchise Agreement").

2. A Baskin-Robbins representative recently inspected Defendants' Store and found numerous violations of health, sanitation, and safety standards. Despite notice by Baskin-Robbins and ample opportunity to cure, Defendants have failed to correct this situation.

3. By this Motion, Baskin-Robbins seeks to enjoin Defendants to cease violating at their Store the standards for health, sanitation, and safety set forth in the Franchise Agreement between the parties and Baskin-Robbins' operating manuals.

4. In support of this Motion, Baskin-Robbins relies on the accompanying Memorandum of Law, certifications, and exhibits.

WHEREFORE, Baskin-Robbins respectfully requests that the Court grant its motion for a preliminary injunction and enjoin Defendants to cease violating at their Store Baskin-Robbins' standards for health, sanitation, and safety as identified on the Quality Assurance Food Safety & Sanitation Reinspection form dated July 31, 2006 within five (5) days of the date of the Court's Order.

Respectfully submitted,

*[signature]*

Eric L. Yaffe (No. 439750)
Stephen J. Vaughan (No. 464136)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, DC 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

*Attorneys for Plaintiff*
Baskin-Robbins Franchised Shops LLC

Dated: August 24, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASKIN-ROBBINS FRANCHISED SHOPS LLC, )
  a Delaware Limited Liability Company, )
130 Royall Street, Canton, MA 02021 )
                                    )
        Plaintiff, )
                                    )
    v.                              )    C.A. No. 1:06CV01492
                                    )
CHAIROD RAUNGTRIPHOP and            )
YUPIN RAUNGTRIPHOP,                 )
  Both residents of the Commonwealth of Virginia, )
9481 Gauge Drive, Fairfax Station, VA 22039 )
                                    )
        Defendants. )

## PLAINTIFF BASKIN-ROBBINS FRANCHISED SHOPS LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Eric L. Yaffe (No. 439750)
Stephen J. Vaughan (No. 464136)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, DC  20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

*Attorneys for Plaintiff*
Baskin-Robbins Franchised Shops LLC

Dated:  August ___, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ................................................................................................1

ARGUMENT ........................................................................................................................6

A.    BASKIN-ROBBINS IS LIKELY TO SUCCEED ON THE MERITS .......................6

B.    THE DEPLORABLE CONDITION AT DEFENDANT'S STORE
HAS CAUSED AND CONTINUES TO CAUSE IRREPARABLE
INJURY TO BASKIN-ROBBINS' REPUTATION AND GOODWILL
FOR WHICH NO ADEQUATE REMEDY AT LAW EXISTS .........................7

C.    THE BALANCE OF HARM WEIGHS DECISIVELY IN
BASKIN-ROBBINS' FAVOR ...........................................................................11

D.    THE INJUNCTION IS IN THE PUBLIC'S INTEREST ..................................12

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Baskin-Robbins, Inc. v. A. Ender, Ltd.*, No. CV-99-206-ECR, 1999 WL
1318498 (D. Nev. Sept. 10, 1999) .................................................................................. 6, 8, 11, 12

*Burger King Corp. v. Stephens*, No. 89-7691,
1989 U.S. Dist. LEXIS 14527 (E.D. Pa. Dec. 6, 1989) ................................................................ 9

*C.B. Fleet Co., Inc. v. Complete Packaging Corp.*,
739 F. Supp. 393 (N.D. Ill. 1990) .............................................................................................. 10

*Days Inn of America, Inc. v. Patel*, 88 F. Supp. 2d 928 (C.D. Ill. 2000) ..................................... 7

*Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*,
96 F. Supp. 2d 146 (N.D.N.Y. 2000) ................................................................................. 7, 8, 11

*Dunkin' Donuts Inc. v. Kashi Enters., Inc.*,
106 F. Supp. 2d 1325 (N.D. Ga. 2000) .............................................................................. 7, 8, 11

*Dunkin' Donuts Inc. v. Priya Enters., Inc.*, 89 F. Supp. 2d 319 (E.D.N.Y. 2000) ....................... 7

*Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir. 1982) ............................... 12

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) .............................................. 10

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994) .......................................................................................................... 9

*National Wildlife Fed'n v. Bufurd*, 835 F.2d
(D.C. Cir. 1987) ........................................................................................................................... 9

*Planned Parenthood v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977) ....................... 9

*S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992) ................................................. 9

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991) ............................. 10

*Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981) ............................................. 12

*Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996) .............................. 7, 10

## FEDERAL STATUTES

15 U.S.C. § 1065 ............................................................................................................................ 2

## INTRODUCTION

Plaintiff Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins"), successor-in-interest to Baskin-Robbins USA, Co. (referred to hereinafter as "Baskin-Robbins") hereby move to enjoin their franchisee, Defendants Chairod Raungtriphop and Yupin Raungtriphop to cease violating at their Baskin-Robbins store the standards for health, sanitation and safety set forth in their Franchise Agreement with Baskin-Robbins and Baskin-Robbins' operating manuals. At present, Defendants are in flagrant violation of those standards. For example, a recent inspection of Defendants' store revealed numerous violations of health and safety standards, including products not within code date, products without expiration dates, condensation and ice on cakes in dessert display, frozen food not stored at proper temperature, utensils stored in standing water in syrup rail and generally unclean and poorly maintained premises. Despite notice by Baskin-Robbins and ample opportunity to cure, Defendants refuse to correct this unacceptable situation. This is an action to effect an immediate cure of specific conditions currently posing a health risk at Defendants' store. These conditions constitute a material breach of the Franchise Agreement as well. Baskin-Robbins does not seek an order mandating future compliance, but only the cessation of an existing condition.

As discussed *infra*, a preliminary injunction is warranted in this instance because Baskin-Robbins is likely to succeed on the merits and Defendants' store contains numerous health and safety violations which have injured and continue to injure Baskin-Robbins' reputation and goodwill. No adequate remedy at law exists.

## FACTUAL BACKGROUND

1. Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States. (Laudermilk Cert., Ex. 1,

1

¶ 3.) Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information. *(Id.)*

2. Baskin-Robbins is the franchisor of the Baskin-Robbins System. *(Id.* ¶ 4.)

3. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins Incorporated has the exclusive license to use and license others to use these trademarks and trade names and has used them continuously since approximately 1950 to identify its ice cream stores, and the ice cream and other products associated with those stores. *(Id.* ¶ 5.)

5. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" and related marks. Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065. *(Id.* ¶ 6.)

6. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. Baskin-Robbins has expended tens of millions of dollars in advertising and promoting the Baskin-Robbins marks over the past fifty years. *(Id.* ¶ 7.) As a result, the Baskin-Robbins marks have become famous throughout the United States. *(Id.)*

7. Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States. *(Id.* ¶ 8.) In the fifty years since the Baskin-Robbins system began, millions of consumers have been served in Baskin-Robbins stores. *(Id.)*

2

8. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. (*Id.* ¶ 9.) The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation. (*Id.*)

9. The goodwill and reputation associated with the Baskin-Robbins trademarks and trade names are impaired when a franchisee fails to maintain standards and operates an unsanitary or unclean business under the Baskin-Robbins trademarks. (*Id.* ¶ 10.)

10. Defendants are a Baskin-Robbins franchisee for an ice cream store located at 2604 Connecticut Avenue Northwest, Washington, District of Columbia 20008 ("Defendant's Store") pursuant to an Extension of the Franchise Agreement dated December 22, 2003 (the "Franchise Agreement"). (*Id.* ¶ 11.) Defendants are licensed to use the Baskin-Robbins trademarks, trade name, and trade dress. (*Id.*)

11. Baskin-Robbins provides each of its franchisees manuals, rules, and plans (collectively referred to hereinafter as the "Baskin-Robbins Manuals") which set forth in detail the procedures, methodology, and standards applicable to the operation of a Baskin-Robbins store. These documents include:

a. The Store Operations and Management Guide, which includes detailed sections on Dress Standards (Chapter 205.1), Cleanliness and Store Appearance (Chapters 300.1-303.1), Ice Cream Product Handling (Chapter 604.1), Yogurt Product Handling (Chapter 609.1), Product

3

Preparation (Chapters 700.1-704.1), Sanitation and Maintenance (Chapters 1100.1-1108.1), and Safety (Chapter 1207.1);

      b.     The Rules of Operation of a Baskin-Robbins Store; and

      c.     The Retail Food Safety System Manual.

*(Id. ¶ 12.)*

    12.     Taken together, the Manuals provide detailed and specific guidance and standards for health, sanitation and safety. *(Id. ¶ 13.)*

    13.     The Franchise Agreement executed by Defendants contains acknowledgments and agreements by Defendants concerning the importance of maintaining Baskin-Robbins' standards for health, sanitation, and safety. For example, the applicable paragraphs of the Franchise Agreement include:

      a.     Sections 5.0 and 5.1: FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons. FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole. . . . FRANCHISEE further agrees as follows:

      b.     Section 5.1.1: FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR. All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand. FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

      c.      Section 5.1.6: FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.

Ex. 1C §§ 5.0, 5.1, 5.1.1, and 5.1.6.

14.    The Franchise Agreement also contains acknowledgments and agreements concerning the use of Dunkin' Donuts' proprietary marks. The relevant sections include:

      a.      Sections BR-7.0.1-7.1: FRANCHISEE acknowledges and agrees that **Baskin 31 Robbins®** is a registered trademark owned by BRI, that said mark has been and is being used by BASKIN-ROBBINS under license from BRI, and by its franchisees and licensees of Baskin-Robbins; that said mark, together with the other Proprietary Marks presently owned by BRI or which may be acquired in the future by either or them, constitutes part of the Baskin-Robbins System; that valuable goodwill is associated with and attached to said mark and the other Baskin-Robbins Proprietary Marks. . . . FRANCHISEE agrees to use the Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement.

      b.      Sections 8.0 and 8.0.1: [N]either FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall . . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s).

Ex. 1C §§ BR-7.0.1, 7.1, 8.0, and 8.0.1.

15.    Pursuant to the Franchise Agreement, Defendants agreed that a failure to maintain standards constitutes a default under the Agreement. (*Id.* ¶ 16.4.1.I)

16.    On July 28, 2006, Defendants' Store was inspected by the Steritech Group, a third party hired by Plaintiffs' to conduct food safety inspections. (Laudermilk Cert., Ex. 1, ¶ 14.) Numerous standards violations were identified relating to health, sanitation, and safety. *(Id.)* On July 28, 2006, Baskin-Robbins sent Defendant a notice to cure listing standards violations at Defendant's Store and requesting that these deficiencies be cured immediately. *(Id.* ¶ 16.) On

5

July 31, 2006, the Baskin-Robbins representative reinspected Defendant's Store. (Lyles Cert., Ex. 2, ¶ 5.) Numerous standards violations remained uncured. (*Id.*)

17.     In sum, Defendants agreed to maintain their store according to the standards set forth in the Franchise Agreement and the Manuals. Despite specific notice and ample opportunity to cure these deficiencies, Defendants refuses to honor the terms of the Franchise Agreement. As a result, Baskin-Robbins has suffered and will continue to suffer irreparable harm that this Court can prevent only through issuance of the requested preliminary injunction.

## ARGUMENT

The grant or denial of a preliminary injunction rests in the sound discretion of the trial court. In ruling on a motion for a preliminary injunction, a court must consider the following factors: (1) the plaintiff's likelihood on success of the merits; (2) the threat of irreparable injury to the plaintiff absent the injunction; (3) the possibility of substantial harm to other parties caused by issuance of the injunction; and (4) the public interest. *National Wildlife Fed'n v. Bufurd*, 835 F.2d 305, 318 (D.C. Cir. 1987). An examination of these factors demonstrates that Baskin-Robbins is entitled to a preliminary injunction.

### A.     BASKIN-ROBBINS IS LIKELY TO SUCCEED ON THE MERITS.

The record demonstrates that Defendants have breached the Franchise Agreement. The Manuals and the Franchise Agreement spell out clearly Defendants' obligation to operate a clean and safe store. As the documents and photographs make clear, standards violations were observed at Defendants' Store, a Notice to Cure was delivered, and, after the opportunity to cure expired, Defendants failed to cure the violations. Other federal courts have found that such circumstances constitute a clear breach of the Franchise Agreement. *See Baskin-Robbins, Inc. v. A. Ender, Ltd.*, No. CV-99-206-ECR, 1999 WL 1318498 (D. Nev. Sept. 10, 1999), at *2-3 (court

6

held that the franchisor was likely to succeed on its breach of contract claim based on evidence that the franchisee violated the identical health and safety standards as those at issue here) (Ex. 3); *Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F. Supp. 2d 1325, 1327 (N.D. Ga. 2000) ("[T]he record includes numerous documents, affidavits, and photographs, which demonstrate that the defendant has failed to cure the alleged violations. Accordingly, the court finds that the plaintiff is likely to succeed in its action to enjoin the defendant from violating the Franchise Agreement standards. . . ."); *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146,150 (N.D.N.Y. 2000) (based on similar evidence the court found that it was "likely that [Dunkin'] will succeed on its breach of contract claim"). *See also Dunkin' Donuts Inc. Priya Enters., Inc.*, 89 F. Supp. 2d 319, 323 (E.D.N.Y. 2000) (granting summary judgment for Dunkin' and holding that the violations present at the franchisee's shops "unquestionably amount to serious breaches of . . . the franchise agreement"); *Days Inn of America, Inc. v. Patel*, 88 F. Supp. 2d 928, 932-33 (C.D. Ill. 2000) (granting summary judgment on franchisor's breach of contract claim on the grounds that the franchisee failed to comply with franchisor's standards). Such conduct also constitutes a violation of the Lanham Act. *See Kashi Enters., Inc.*, 106 F. Supp. 2d at 1327; *Albireh Donuts, Inc.*, 96 F. Supp. 2d at 150-51 (citing *Warner-Lambert Co.*, 86 F.3d at 5-8). Accordingly, Baskin-Robbins is very likely to succeed on the merits.

**B.    THE DEPLORABLE CONDITION AT DEFENDANT'S STORE HAS CAUSED AND CONTINUES TO CAUSE IRREPARABLE INJURY TO BASKIN-ROBBINS' REPUTATION AND GOODWILL FOR WHICH NO ADEQUATE REMEDY AT LAW EXISTS.**

Under virtually identical circumstances, another United States District Court held that a Baskin-Robbins franchisee's violation of Baskin-Robbins' standards for health, sanitation, and safety constituted irreparable injury warranting a preliminary injunction:

7

> The evidence shows that there is a threat of irreparable injury to plaintiff if the injunction is not granted. The possibility of irreparable injury arises because the evidence shows that unsanitary conditions at defendant's store may result in illness of Baskin-Robbins' customers. The potential of infection of customers because of e-coli or other dangerous ailments . . . from unsanitary conditions at the store is considerable. If such were to occur, certainly the reputation, goodwill and business of Baskin-Robbins at large in the country would be harmed. This constitutes irreparable injury.

*Baskin-Robbins, Inc. v. A. Ender, Ltd.*, No. CV-N-99-206-ECR, 1999 WL 1318498, at *3 (D. Nev. Sept. 10, 1999) (granting the identical injunctive relief sought here) (attached hereto as Exhibit 3).

Similarly, other federal district courts have recently held that a franchisee's violation of the identical health, sanitation, and safety standards at issue here constituted irreparable injury warranting a preliminary injunction:

> The possibility of irreparable injury arises because the record evidence indicates that unsanitary conditions at the defendant's store may result in illness to the plaintiff's customers. To this end, the court notes that the plaintiff has an important interest in the uniformity of food specifications, preparation methods, quality and appearance, facilities and service of its franchisees. No[t] only does the defendant's conduct place the plaintiff's trademarks and trade name at risk, but more importantly, it puts the public in danger of food contamination. Further, the plaintiff has a strong legal interest in avoiding disputes stemming from the cleanliness and safety of its products. Accordingly, if customers become ill due to the defendant's franchises' unsanitary conditions, the plaintiff's national reputation, goodwill, and business will be harmed.

*Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F. Supp. 2d 1325, 1327 (N.D. Ga. 2000) (citations omitted). *See also Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 149 (N.D.N.Y. 2000) ("[T]he serving of inferior, non-conforming products under [Dunkin's] name could have a detrimental impact on [Dunkin's] name and goodwill, devalue [Dunkin's] trademark, and subject [Dunkin'] to a loss of business and exposure to substantial tort liability.

The courts have repeatedly held that such damage is not readily quantifiable and, thus, constitutes irreparable harm.").

This decision follows the well-established principle that a franchisor lacks control over its trademarks when a franchisee fails to operate its shop in compliance with established standards:

> The public's knowledge of the uniformity of operation and quality of product draws business to Burger King restaurants. Therefore, the name "Burger King" constitutes a trademark of great value to BKC and to the franchisees. BKC's inability to protect and insure the maintenance of the high quality of service that the marks represent would cause irreparable injury to BKC's business reputation and goodwill.
>
> If BKC is unable to control the nature and quality of the goods and services defendants provide at Burger King franchised restaurants, *activities not meeting BKC standards at those restaurants could irreparably harm the goodwill associated with BKC's marks and BKC's reputation.* Moreover, failure to meet some of the safety and sanitary standards here involved could subject BKC to substantial civil liability to members of the public personally injured thereby.

*Burger King Corp. v. Stephens*, No. 89-7691, 1989 U.S. Dist. LEXIS 14527, at *26-27 (E.D. Pa. Dec. 6, 1989) (emphasis added) (granting injunction requiring franchisees to comply with franchisor's quality control standards) (attached hereto as Exhibit 4).

Courts have consistently found that injury to reputation or goodwill is not easily measured in monetary terms, and is thus deemed irreparable. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of . . . the loss of goodwill, the irreparable injury prong is satisfied."); *Planned Parenthood v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977) (finding that goodwill imperiled by defendant's actions constitutes irreparable injury).

9

In trademark infringement cases, courts have issued injunctions similar to the one sought here. For example, in *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996), the manufacturer of cough drops, Warner-Lambert, brought a trademark infringement action against its licensee for selling cough drops that did not comply with Warner-Lambert's quality control standards. The Second Circuit granted an injunction prohibiting the sale of the non-conforming products. (*Id.* at 6-8.) In holding that the injunction was warranted, the court stated:

> A company that avails itself of wholly effective [quality control] procedures will generally be entitled to relief against any measurable sales of non-conforming goods. Sales of non-conforming goods will in those circumstances place poor quality goods where none were before and necessarily devalue the mark associated with them.

(*Id.* at 7). *See also Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (affirming injunction against the sale of products that did not meet trademark holder's quality control standards); *C.B. Fleet Co., Inc. v. Complete Packaging Corp.*, 739 F. Supp. 393, 398-99 (N.D. Ill. 1990) (same).).

Not only does conduct such as Defendant's put the franchisor's trademarks and trade name at risk, but more importantly, it endangers the public's health. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998) ("it is difficult for the court to conceive of substantially more serious violations than those that could jeopardize the health of [the franchisee's] patrons . . . .").

Baskin-Robbins has invested a tremendous amount of resources over the years in building the considerable goodwill associated with their marks. Customers have grown to expect high standards for health, sanitation, and safety from Baskin-Robbins franchises. Defendant's conduct has injured and continues to injure that hard earned reputation and associated goodwill. Accordingly, ample justification exists for the finding of irreparable injury to Baskin-Robbins.

10

C. **THE BALANCE OF HARM WEIGHS DECISIVELY IN BASKIN-ROBBINS' FAVOR.**

Defendants can offer no reasonable justification for their conduct. Issuance of the preliminary injunction would simply require Defendants to comply with the requirements to which their freely agreed in signing the Franchise Agreement. Consequently, no harm will come to Defendants in granting the injunction, and, ironically, their business will likely increase due to the improved condition of their store. In contrast, Defendants' conduct threatens the reputation and goodwill of Baskin-Robbins, which extends to each of its franchisees. As the court held in *A. Ender, Ltd.*:

> As contrasted with the cost to [the franchisee] of curing these deficiencies, the outbreak of salmonella or some other disease or infection which may be visited upon the customers of the store, as a result of conditions at the store, tip the hardships in favor of plaintiff, because those risks and those problems are very serious and may have even a national impact on Baskin-Robbins.

1999 WL 1318498, at *3:

Other federal courts have agreed. In *Kashi Enters., Inc.*, the court noted that the balance of hardships tipped in the franchisor's favor:

> The instant injunction would only require that the defendant comply with the Franchise Agreement, which it freely entered. While no harm would befall the defendant by its compliance with the sanitation standards, the court notes that its business and public safety would at worst improve. Accordingly, the court finds that threatened injury to the plaintiff outweighs any conceivable injury to the defendant.

106 F. Supp. 2d at 1327. *See also Albireh Donuts, Inc.* 96 F. Supp. 2d at 151 ("[T]he balance of hardships decidedly tip[s] in favor of [Dunkin'] in light of the dangers posed to the public and [Dunkin's] name and goodwill and the insubstantial burden that would be imposed upon Defendants by requiring them to comply with their obligations under the franchise agreement.").

11

Licensed franchisees have placed their trust in the franchisor to protect their substantial investment in the system. *See Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir. 1982); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) ("If the injunction is denied, . . . [the franchisor's] licensing program will lose much of the confidence reposed in it by the licensees, who also made substantial investments based upon the exclusivity of their licenses."). The balance of harms weighs decisively in Baskin-Robbins' favor.

### D.   THE INJUNCTION IS IN THE PUBLIC'S INTEREST

This case raises serious questions regarding the public's exposure to conditions affecting health, sanitation, and safety. Little doubt exists that the requested preliminary injunction would advance the public interest. It is axiomatic that the public has a right to a clean and safe environment where food is prepared and sold. Granting the requested preliminary injunction would force Defendants to maintain such an environment at their store. *See Baskin-Robbins, Inc. v. A. Ender, Ltd.*, No. CV-99-206-ECR, 1999 WL 1318498 (D. Nev. Sept. 10, 1999), *3 ("The public health aspects of the evidence show that the public interest favors the granting of the injunction"). Moreover, the public has an interest in requiring parties to honor their obligations under contracts into which they freely enter. Here, Defendants are clearly breaching the Franchise Agreement and endangering the health of their customers.

### CONCLUSION

The factors the Court examines for issuance of a preliminary injunction are more than satisfied by Baskin-Robbins here. Baskin-Robbins has been and continues to be irreparably injured by Defendants' conduct; Baskin-Robbins is likely to succeed on the merits; the balance of the equities weighs decisively in Baskin-Robbins' favor; and sufficiently serious questions going to the merits exist to make them a fair grounds for litigation. Baskin-Robbins has no

adequate remedy at law. Accordingly, Baskin-Robbins' Motion for a Preliminary Injunction should be granted.

Respectfully submitted,

Eric L. Yaffe (No. 439750)
Stephen J. Vaughan (No. 464136)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, D.C. 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

*Attorneys for Plaintiffs*
Baskin-Robbins Franchised Shops LLC

Dated: August 24, 2006